UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MARITZA MARQUEZ and YANCY MARQUEZ,

                                 Plaintiffs,

        – against –

ANTHONY J. ANNUCCI, Acting Commissioner of the
New York State Department of Corrections and
Community Supervision, *in his official capacity only*;
WILLIAM HOGAN, Regional Director of New York
State Department of Corrections and Community
Supervision; JOSEPH LIMA, Area Supervisor for the
New York State Division of Parole; Bureau Chief LEWIS
SQUILLACIOTI; Senior Parole Officer M. MEDINA;
Parole Officer ROSA NUNEZ; Senior Parole Officer R.
HAMILTON; Senior Parole Officer KEVIN UZZELL;
Senior Parole Officer NEELEY; Bureau Chief MARK
PARKER; Parole Officer ALEXANDRA
MANDERSON; Parole Officer BRIAN FULLER; Parole
Officer MERCEDES; Parole Officer JOHN DOE; Parole
Officer RODRIGUEZ; Parole Officer McEWEN; Parole
Officer LOFTON; Senior Parole Officer HAMILTON;
Parole Officer LINDSY OSOUNA; Senior Parole Officer
J. KENNEDY; and, Parole Officer A. CONYERS,

                                 Defendants.

------------------------------------------------------------------------x

20 Civ. 1974 (AKH)


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' REQUEST FOR A PRELIMINARY INJUNCTION


                              LETITIA JAMES
                              Attorney General
                              State of New York
                              <u>Attorney for Defendants</u>
                              28 Liberty Street, 18th Floor
                              New York, New York 10005
                              (212) 416-6185

Jeb Harben
Assistant Attorney General
    <u>Of Counsel</u>

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT ............................................................................................................................5

I.     THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR A
PRELIMINARY INJUNCTION ......................................................................................5

     A.     Standards for a Preliminary Injunction ................................................................5

           i.     Requirements ....................................................................................5

           ii.     Unclean Hands ..................................................................................6

           iii.     Delay ................................................................................................6

           iv.     Improper Parties ...............................................................................7

     B.     Plaintiffs Have Failed to Make a Strong Showing of Irreparable Harm.................8

     C.     The Public Interest Will Not Be Served By The Preliminary Injunction ...............9

     D.     Plaintiffs Have Failed to Show a "Clear" or "Substantial" Likelihood
of Success............................................................................................................9

           i.     This Court Should Not Disturb Properly Imposed Parole Conditions.......9

           ii.     No Protected Liberty Interest or Substantive
Due Process Right Has Been Violated......................................................12

                  a.  Procedural Due Process ........................................................12

                  b.  Substantive Due Process .......................................................12

                  c.  The Conditions at Issue are Rational ...................................14

           iii.     GPS Monitoring .............................................................................15

CONCLUSION.........................................................................................................................16

## PRELIMINARY STATEMENT

Defendants Annucci, Hogan, Parker, Squillacioti, Medina, Nunez, Hamilton, Mercedes, Rodriguez, McEwen, Hamilton, Kennedy, Conyers, Uzzell, Neeley, Manderson, Fuller, Osouna, and Loftin (misspelled Lofton) ("Defendants"), [1] all current or former New York State Department of Corrections and Community Supervision ("DOCCS") employees, by their attorney, Letitia James, Attorney General of the State of New York, submit this memorandum of law opposition to Plaintiffs' Motion for a Preliminary Injunction. See ECF Nos. 23-25 and 69-73.

Plaintiffs, Yancy Marquez and Maritza Marquez (who is referred to as Maritza Wallace, her maiden name, in relevant DOCCS materials), married convicted sex offenders serving terms of post-release supervision, filed suit on March 5, 2020 (ECF No. 1) under 42 U.S.C. § 1983, alleging that their First and Fourteenth Amendments rights were violated as a result of parole conditions imposed on them by DOCCS prohibiting their contact. The Complaint names all Defendants in their individual and official capacities, except defendant Annucci, Acting DOCCS Commissioner, who is sued only in his official capacity. On April 24, 2020, Plaintiffs' filed the instant motion for a preliminary injunction (ECF Nos. 69 - 73), which also referenced certain materials previously filed contemporaneously with the Complaint, and which are referenced by the Complaint (ECF Nos. 23 - 25).

As a preliminary matter, DOCCS has agreed to allow Plaintiffs to communicate with each other via telephone. See May 15, 2020 Declaration of Leleith Shaw ("Shaw Decl.") ¶5. At this time, DOCCS does not agree to rescind any other contact prohibitions.

---

[1] As previously represented to the Court (ECF No. 76), defendant Lima died before the commencement of this action. This office does not represent him or his Estate. It is Defendants' understanding that Plaintiffs are still considering whether to seek to name his Estate.

1

## BACKGROUND

On October 3, 2008, Mr. Marquez was convicted of a criminal sexual act in the first degree pursuant to N.Y. Penal Law § 130.50 in connection with engaging in anal sexual conduct with an eight-year-old male child. Mr. Marquez was sentenced to five years in prison, followed by ten years of post-release supervision. Complaint ¶ 38.

On July 15, 2010, Ms. Wallace was convicted of a criminal sexual act in the first degree, N.Y. Penal Law § 130.50, and endangering the welfare of a vulnerable elderly person in the second degree, N.Y. Penal Law § 260.32(4), in connection with the sexual assault of an elderly woman. Ms. Wallace was sentenced to five years in prison, followed by twenty years of post-release supervision. Complaint ¶¶ 39-40.

On or about October 7, 2014, Mr. Marquez pled guilty for failure to register himself under the Sex Offender Registry as required by his parole conditions and Corrections Law § 168. See Shaw Decl. ¶ 20; Complaint ¶¶ 52-53; Tse Decl., Ex. C (ECF No. 23-3 (5 of 9)).

In or about 2015, Plaintiffs, who were both serving terms of post-release supervision, began a relationship. On or about July 15, 2015, Ms. Wallace advised her parole officer of her relationship with Mr. Marquez, and of his criminal record. Shaw Decl. ¶ 10; Complaint ¶ 69; Tse Decl., Ex. D (ECF No. 23-5 (15-16 of 18)).

On or about August 6, 2015, Mr. Marquez advised his parole officer of his relationship with Ms. Wallace, and of her criminal record. Shaw Decl. ¶ 11; Complaint ¶ 70.

In addition to General Rule No. 7, which Plaintiffs were already subject to, and which prohibits fraternization with other convicted persons (Shaw Decl. ¶¶ 6 - 8; Complaint ¶ 111; Tse Decl., Ex. D (ECF No. 23-4 (6 of 18) (General Rule 7 (Wallace)) and Ex. G (ECF No. 23-9 (2 of

5) (General Rule 7 (Marquez)),[2] an additional special condition was imposed on Mr. Marquez (on August 6, 2015) and Ms. Wallace (on August 12, 2015) clarifying that contact between them was prohibited. Shaw Decl. ¶¶ 9, 12, and 16; Complaint ¶¶ 70-73; Tse Decl., Ex. C. (ECF No. 23-3 (7 of 9) (August 6, 2015 specific contact restrictions (Marquez)) and Ex. D (ECF No. 23-5 (16 of 18) (August 12, 2015 specific contact restrictions (Wallace)).

Approximately one month later, on September 16, 2015, Mr. Marquez and Ms. Wallace married each other and did not advise their respective parole officers of this until 2016. Shaw Decl. ¶ 13; Complaint ¶¶ 76-79; Tse Decl., Ex. D (ECF No. 23-6 (13 of 25)).

Both Mr. Marquez and Ms. Wallace were subsequently charged with, and found guilty of, violating the conditions of their parole due to their fraternization, as evidenced by their marriage. Shaw Decl. ¶ 14; Complaint ¶¶ 81 - 86; Tse Decl., Exs. C and D.

On or about May 3, 2016, through counsel, Ms. Wallace sought to administratively vacate the conditions in question so that Ms. Wallace and Mr. Marquez could reside together. Shaw Decl. ¶ 16; Complaint ¶ 87; Tse Decl., Ex. E.

On or about January 19, 2017, Mr. Marquez attempted to do so through counsel as well. Shaw Decl. ¶ 16; Complaint ¶¶ 93, 98; Tse Decl., Ex. F.

These requests were not granted. Shaw Decl. ¶ 16; Complaint ¶¶ 90, 98; Tse Decl., Ex. F.

There have not been additional administrative submissions by either Plaintiff seeking to vacate or modify the conditions in question. Shaw Decl. ¶ 16; see also Complaint (generally).

On or about June 8, 2018, Mr. Marquez failed to follow DOCCS post-release supervision

---

[2] General Rule No. 7 simply implements 9 NYCRR § 8003.2(g), which also mandates that parolees "not be in the company of or fraternize with any person he knows to have a criminal record or whom he knows to have been adjudicated a youthful offender except for accidental encounters in public places, work, school or in any other instance with the permission of his parole officer."

conditions when he punched another resident at his assigned shelter. As a result of these parole violations a warrant was issued and a parole violation was sustained. Shaw Decl. ¶ 22, Ex. B (August 6, 2018 2:39 p.m. entry noting "revoke and restore"); Complaint ¶ 137.[3]

On or about March 11, 2019, Mr. Marquez failed to follow the provisions of law (and violated the conditions of his post-release supervision) when he failed to pay his fare in the subway system and then resisted arrest, causing an NYPD officer to fall to the ground. As a result of these parole violations a warrant was issued and a parole violation was sustained. Shaw Decl. ¶ 23, Ex. A (May 24, 2019 10:42 a.m. entry noting "revoke and return," resulting in return to prison for 12 months or 90 day alternative treatment program); Complaint ¶¶ 145-147, 149.

On or about November 5, 2019, Mr. Marquez failed to follow DOCCS post-release supervision conditions and the law when he was in possession of a controlled substance. As a result of these parole violations a warrant was issued and a parole violation was sustained. Shaw Decl. ¶ 24, Ex. A (April 9, 2020 entry noting "revoke and restore"); Complaint ¶ 150 n. 17.[4]

Since his release to parole supervision, Mr. Marquez has not completed board mandated treatment programs that were assigned in order to prevent future victimization and address his criminogenic needs as per DOCCS supervision of sex offenders. Shaw Decl. ¶ 25.

---

[3] The Complaint (at ¶ 139) alleges that "DOCCS, represented by a parole officer, came to the hearing and said it could not proceed with its case," but does not indicate the ultimate disposition of the charges. DOCCS' chronology report indicates that the Administrative Law Judge revoked Mr. Marquez's parole, but immediately restored him to parole supervision, which is the equivalent to sustaining a parole violation. Shaw Decl. ¶ 22, Ex. B (August 6, 2018 2:39 p.m. entry noting "revoke and restore").

[4] The Complaint states several other instances where Mr. Marquez was in violation of his parole conditions, but DOCCS did not seek to revoke his post-release supervision. See, e.g., Complaint at ¶¶ 51 (drug use), 55 (drug use). Exhibits to the Shaw Decl. also show numerous instances of problematic conduct. See, e.g., Ex. B (entries on March 7, 2018 (1:47 p.m.), March 14, 2018 (3:36 p.m. and 5:10 p.m.), May 2, 2018 (1:00 p.m.), November 20, 2018 (5:00 p.m.)).

**ARGUMENT**

**I.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST
FOR A PRELIMINARY INJUNCTION**

### A.    <u>Standards for a Preliminary Injunction</u>

The "extraordinary remedy" of a preliminary injunction is "never awarded as of right,"
<u>Monserrate v. N.Y. State Senate</u>, 599 F.3d 148, 154 (2d Cir. 2010) (quoting <u>Winter v. Natural Res.
Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008)), and "should not be granted unless the movant, by a
clear showing, carries the burden of persuasion." <u>Grand River Enter. Six Nations, Ltd. v. Pryor</u>,
481 F.3d 60, 66 (2d Cir. 2007) (internal citation and quotation omitted).

### i.    <u>Requirements</u>

To obtain a preliminary injunction concerning governmental action, "a moving party must
demonstrate that (1) he is likely to succeed on the merits of the underlying claim, (2) he will suffer
irreparable harm absent injunctive relief, and (3) the public interest weighs in favor of granting the
injunction." <u>Pope v. Cty of Albany</u>, 687 F.3d 567, 570 (2d Cir. 2012). The Supreme Court has also
required the plaintiff to show another factor, (4) that the balance of equities tips in his favor. <u>Id.</u> at
570, n. 3.

In addition, where, as here, a plaintiff seeks a mandatory injunction - one that "alter[s] the
status quo by commanding some positive act" - a higher standard applies. <u>Tom Doherty Assocs.,
Inc. v. Saban Entm't, Inc.</u>, 60 F.3d 27, 33-34 (2d Cir. 1995). The party seeking the injunction must
demonstrate a "'clear' or 'substantial' likelihood of success" or show that "extreme or very serious
damage" would result in the absence of preliminary relief. <u>Id.</u> (citation omitted); <u>accord People ex
rel. Schneiderman v. Actavis PLLC</u>, 787 F.3d 638, 650 (2d Cir. 2015); <u>Cacchillo v. Insmed, Inc.</u>,
638 F.3d 401, 406 (2d Cir. 2011); <u>Jolly v. Coughlin</u>, 76 F.3d 468, 473 (2d Cir. 1996).

### ii.     **Unclean Hands**

Moreover, the fact that Plaintiffs were married shortly after informing their respective parole officers of their relationship, and being specifically advised to not have contact with each other, possibly in order to help bolster future legal claims in connection with these issues, demonstrates that each has "unclean hands," which should preclude Plaintiffs from the injunctive relief sought. See Lokai Holdings v. Twin Tiger USA, 306 F. Supp.3d 629, 646 (S.D.N.Y. 2018) (discussing doctrine and quoting Specialty Minerals v. Pluess—Staufer AG, 395 F. Supp.2d 109, 112 (S.D.N.Y. 2005)). Indeed, rather than immediately seeking administrative review of the Special Conditions (and General Rule) that prohibited their fraternization, or revisiting the issue with their respective parole officers after each had a continued record of success while on post-release supervision, they sought to circumvent the process by getting married, which necessarily involved having contact, in violation of DOCCS restrictions (and 9 NYCRR § 8003.2(g)).

### iii.     **Delay**

Finally, "[d]elay in seeking a preliminary injunction can weaken a claim of irreparable harm because 'the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" Environmental Services v. Recycle Green, 7 F. Supp. 3d 260, 279 (E.D.N.Y 2014) (quotation omitted).[5] Here, Plaintiffs have each been subject to Rule No. 7 since they began their terms of post-release supervision and they received specific Special

---

[5]  See Conservative Party of NYS v. NYS Board of Elections, No. 10 Civ. 6923, 2010 WL 4455867, at *2 (S.D.N.Y. Oct. 15, 2010) (no need to reach merits on preliminary injunction motion, where plaintiffs have "slept on their rights" and waited until shortly before event to seek relief); Hessel v. Christie's Inc., 399 F. Supp. 2d 506, 520-21 (S.D.N.Y. 2005) (denying preliminary injunction because "the balance of hardships does not tip decisively in" favor of a movant that could have filed its "application two months ago"). See also FC Online v. Burke's, No. 14 Civ. 3685, 2015 WL 4162757, at *32 (E.D.N.Y. July 8, 2015) ("In assessing irreparable harm, courts should generally consider any undue delay by the plaintiff in seeking the preliminary injunction" and collecting cases).

Conditions regarding their contact with each other in August 2015,[6] nearly five years before the filing of the instant Motion for a Preliminary Injunction, and more than three years after internal administrative submissions seeking to vacate the Special Conditions. See Tse Decl., Ex. E (ECF Nos. 23-7 (Wallace administrative submission)) and Ex. F (ECF No. 23-8 (Marquez administrative submission)); Complaint ¶ 90. Indeed, several of the declarations in support of the Preliminary Injunction are dated August 2019 and the psychological report, which states that it was prepared at the request of counsel, submitted by Plaintiffs is dated April 2019. Tse Decl., Ex. I (ECF No. 23-13). This issue is apparently not an urgent one for Plaintiffs as they have waited years to seek the relief sought.

### iv.   **Improper Parties**

Rather than just seeking a preliminary injunction against defendant Annucci as Acting DOCCS Commissioner, Plaintiffs have moved for a preliminary injunction against every named defendant in this action, yet the Complaint (at ¶¶ 14-34) acknowledges that named defendants Hogan and Lima are no longer employed by DOCCS, and that defendants Squillacioti, Medina, Nunez, Hamilton, Mercedes, Rodriguez, McEwen, Hamilton, Kennedy, Conyers, Uzzell, Fuller, Osouna, and Loftin (misspelled Lofton)[7] are no longer involved with Plaintiffs' post-release supervision. Accordingly, they are improper parties for the injunctive relief sought. While defendant Parker is the Bureau Chief of the bureau that supervises Ms. Wallace, he has no power to make decisions with respect to Mr. Marquez. While defendants Hogan and Lima were

---

6 See, e.g., Tse Decl., Ex. C. (ECF No. 23-3 (7 of 9) (August 6, 2015 specific contact restrictions (Marquez)); Ex. D (ECF No. 23-4 (6 of 18) (General Rule 7 (Wallace) and ECF No. 23-5 (16 of 18) (August 12, 2015 specific contact restrictions (Wallace)); Ex. G (ECF No. 23-9 (2 of 5) (General Rule 7 (Marquez)).

7 Defendant Loftin is no longer employed by DOCCS.

supervisors long before the lawsuit was filed, their successors are not automatically substituted here because they did not retire after this action commenced, but rather, well before. See Nickelson v. Fischer, 9:15 Civ. 227, 2016 WL 1128181, at * 5 (N.D.N.Y. February 16, 2016) (requiring Plaintiff to amend pleading to name successors where named defendants sued in official capacities had retired before action commenced), adopted 2016 WL 1122077 (N.D.N.Y. March 22, 2016). In sum, seeking a preliminary injunction against every named defendant makes little sense.

### B.   Plaintiffs Have Failed to Make a Strong Showing of Irreparable Harm

"To satisfy the irreparable harm requirement, [p]laintiff must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (internal quotation omitted).  Here, Plaintiffs have not demonstrated a likelihood of irreparable harm, much less the likelihood of "extreme or very serious damage," Tom Doherty, 60 F.3d at 34, absent the granting of a preliminary injunction. Indeed, while Plaintiffs obtained a marriage certificate nearly five years ago, Plaintiffs have not alleged they ever lived together as husband and wife. This is hardly a situation where two people who had lived their lives together and functioned as spouses were separated after the fact. Moreover, it is Mr. Marquez's repeated failure to follow his conditions of parole, such as his assaultive behavior and drug use, which forms the primary basis for the current denial of Plaintiffs' request.[8] See supra at pp. 2-4. To the extent that Plaintiffs wish to communicate with each other, DOCCS has agreed to allow them to do so by telephone. See supra at p. 1.

---

[8] Such "self-inflicted" harms are properly considered in a motion for a preliminary injunction as parties seeking such extraordinary relief regarding a harm that is "to a large extent, self-inflicted… proceeded at their peril." Barefoot Contessa Pantry, LLC v. Aqua Star (USA) Co., No. 15-CV-1092, 2015 WL 845711, at *8 (S.D.N.Y. Feb. 26, 2015) (internal citations and quotations omitted).

C.    <u>The Public Interest Will Not Be Served By The Preliminary Injunction</u>

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Winter</u>, 555 U.S. at 24 (quotation omitted).  Plaintiffs have not met their burden of showing that the equities or the public interest favor the injunctive relief sought. <u>Id.</u> at 31 n. 5.[9]  To the contrary, the public interest will not be served by granting the injunction sought. Valid reasons exist for maintaining the contact and cohabitation restrictions at this time that serve to protect public safety. <u>See</u> Shaw Decl. ¶ 17. Moreover, with the restrictions in place (modified to allow telephone communications), Mr. Marquez, who was just released from custody at Rikers Island following parole revocation proceedings stemming from illegal drug use, has the clear incentive to improve his performance on parole with the goal of further modification, or outright, removal of the restrictions at issue. An improvement in Mr. Marquez's behavior will serve the public interest as well as Plaintiffs'.

D.    **Plaintiffs Have Failed to Show a "Clear" or "Substantial" Likelihood of Success**

i.    <u>This Court Should Not Disturb Properly Imposed Parole Conditions</u>

A parolee's constitutional rights are not unfettered.[10]  "[P]arolees are subject to 'restrictions not applicable to other citizens,' and a prisoner on parole enjoys only 'conditional liberty properly dependent on observance of special parole restrictions.'"  <u>Trisvan v. Annucci</u>, 14-CV-6016, 2015

---

[9] <u>See</u> <u>Salinger v. Colting</u>, 607 F.3d 68, 80 (2d Cir. 2010) ("the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction.") (quotation omitted); <u>see also</u> <u>Stagg P.C. v. U.S. Dep't of State</u>, 158 F.Supp.3d 203, 210 (S.D.N.Y. 2016) ("the balance of equities and the public interest both require the denial of this preliminary injunction").

[10] In New York, conditions for parolees and those under post-release supervision are treated the same.  <u>See</u> N.Y. Penal Law § 70.45(3) ("The board of parole shall establish and impose conditions of post-release supervision in the same manner and to the same extent as it may establish and impose conditions in accordance with the executive law upon persons who are granted parole or conditional release . . .").

U.S. Dist. LEXIS 56844, *5 (E.D.N.Y. April 29, 2015) (quoting Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Thus, a parolee has no constitutionally protected interest in being free of a special condition of parole." Trisvan, 2015 U.S. Dist. LEXIS 56844 at *6 (citing cases).

"[R]eview of conditions of parole is generally a matter for state courts." Id. at *7 (collecting cases). "In the Second Circuit, special restrictions on a parolee's rights 'are upheld where they are reasonably and necessarily related to the interests that the Government retains after his conditional release.'" Muhammad v. Evans, 11-CV-2113, 2014 U.S. Dist. LEXIS 119704, *22-23 (S.D.N.Y. Aug. 15, 2014); see also Murray v. New York City Dept. of Corrs., 13-CV-7090, 2016 U.S. Dist. LEXIS 110982, *25-26 (E.D.N.Y. Aug. 18, 2016) ("[T]he court did not have the authority to subject parole conditions to judicial review without a showing that the parole board or its agents acted in an arbitrary or capricious manner."); Birzon v. King, 469 F.2d 1241, 1243 (2d Cir. 1972) ("[W]e see no reason why the Government may not impose restrictions on the rights of the parolee that are reasonably and necessarily related to the . . . substantial interest in insuring that its rehabilitative goal is not frustrated and that the public is protected from further criminal acts by the parolee."). The imposition of special conditions of parole, "whether imposed prior to or subsequent to release, by the parole board or a field parole officer[,] must be upheld as long as they are reasonably related to a parolee's past conduct, are not arbitrary and capricious, and are designed to deter recidivism and prevent further offenses."  Singleton v. Doe, 14-CV-0303, 2014 U.S. Dist. LEXIS 91749, *10-11 (E.D.N.Y. July 7, 2014).

Because the imposition of special conditions is left to the discretion of the Board of Parole and parole officers, an individual serving a term of post-release supervision does not have a protected liberty interest in being free from special conditions. The Board of Parole is an independent body with legal authority to impose conditions and special conditions of parole upon

10

a person to be released on post-release supervision.  See N.Y. Penal Law § 70.45(3); N.Y. Executive Law §§ 259-b and 259-c; 9 N.Y.C.R.R. § 8003 et seq.  Prior to their actual release, individuals being released to post-release supervision must attest in writing that they received a copy of the conditions of their parole release and that they read and understood said conditions. See 9 N.Y.C.R.R. § 8003.1(c) ("[p]arole or conditional release will not be granted to any individual unless he states in writing, in the presence of a witness, that he has read and understood the conditions of release"); see also 9 N.Y.C.R.R. § 8003.2 ("[a] copy of the conditions of release, with the addition of any special conditions, shall be given to each inmate upon his release to supervision").

Among others, these conditions include the following: "Special conditions. A releasee will fully comply with the instructions of his parole officer and obey such special additional written conditions as [his parole officer], a member of the Board of Parole or an authorized representative of the Division of Parole, may impose."  9 N.Y.C.R.R. § 8003.2(l).  Furthermore, the regulations on special conditions specifically provide that: A special condition may be imposed upon a releasee either prior or subsequent to release. The releasee shall be provided with a written copy of each special condition imposed. Each special condition may be imposed by a member or members of the Board of Parole, an authorized representative of the Division of Parole, or a parole officer.  9 N.Y.C.R.R. § 8003.3. In the instant case, Plaintiffs each repeatedly signed and agreed to the conditions that they now challenge.[11] Having agreed to the conditions in question, rather

---

[11] See, e.g., Tse Decl., Ex. C. (ECF No. 23-3 (7 of 9) (August 6, 2015 specific contact restrictions (Marquez)); Ex. D (ECF No. 23-4 (6 of 18) (General Rule 7 (Wallace) and ECF No. 23-5 (16 of 18) (August 12, 2015 specific contact restrictions (Wallace)); Ex. G (ECF No. 23-9 (2 of 5) (General Rule 7 (Marquez)), ECF No. 23-10 (4-5 of 5) (specific contact restrictions (Marquez), ECF No. 23-11 (6 of 8) (GPS monitoring (Marquez)); and Ex. H (ECF No. 23-12 (4 of 9) (specific contact restrictions (Wallace)) and (8 of 9) (GPS monitoring (Wallace)).

than challenging them administratively, much less in state court pursuant to an Article 78 proceeding, Plaintiffs' request that this Court nullify them should be rejected.

### ii.   No Protected Liberty Interest or Substantive Due Process Right Has Been Violated

#### a.   Procedural Due Process

"[T]o the extent that plaintiff is alleging a protected liberty interest to be free from the special conditions of parole to which he objects, such an 'interest' is not protected and is therefore not a sufficient basis for a Fourteenth Amendment due process violation." Maldonado v. Fischer, 11-CV-1091, 2012 U.S. Dist. LEXIS 137634, *13 (W.D.N.Y. Sept. 24, 2012). "A parolee does not enjoy the 'absolute liberty' of a free citizen, rather, he is considered a prisoner who has been allowed to serve a portion of his sentence outside the prison." Bostic v. Jackson, 04-CV-676, 2008 U.S. Dist. LEXIS 33888, *5 (N.D.N.Y Apr. 24, 2008). "Parolees have no liberty interest in being free from 'special conditions' of parole," but rather "[c]onstitutional rights such as freedom of [] association may be limited without violating the parolee's constitutional rights." Id. A special condition otherwise infringing on constitutional rights is nevertheless valid when it "is reasonably related to legitimate [] objectives and rationally related to [the subject's] history and potential recidivism." Matter of Bohem v. Evans, 79 A.D.3d 1445, 1448 (3d Dep't 2010). "[T]he Government can infringe the first amendment rights of prisoners and parolees so long as the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose[.]" Farrell v. Burke, 449 F.3d 470, 497 (2d Cir. 2006). Thus, because no liberty interest is implicated, the procedural due process clause is not implicated. In any event, Plaintiffs received all the process that was due.

#### b.   Substantive Due Process

"To establish a violation of substantive due process rights, a plaintiff must demonstrate that

the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (quotation omitted). This requires a plaintiff to show that the challenged government action "was arbitrary or irrational or motivated by bad faith." Rosa R. v. Connelly, 889 F.2d 435, 439 (2d Cir. 1989), *cert. denied*, 496 U.S. 941 (1990). As a preliminary matter, the Second Circuit has upheld probation conditions limiting association with other convicted felons or persons with criminal records. See, e.g., U.S. v. Albanese, 554 F.2d 543 (2d Cir. 1977); Birzon v. King, 469 F.2d 1241 (2d Cir. 1972).

"Limitations on contact with a spouse or child are analyzed using the framework of substantive due process, which is subject to the same analysis as a familial association claim under the First Amendment." Maldonado v. Mattingly, 11 Civ. 1091, 2019 WL 5784940, at * 9 (W.D.N.Y. Nov. 6, 2019) (citation omitted). Under this analysis, "[c]onditions of release that restrict the right to intimate association must be reasonably and necessarily related to the legitimate interests of the parole regime, such as rehabilitation and protection of the public, and tailored in light of the conduct for which the individual was convicted." Id. (quoting Harris v. N.Y. Div. of Parole, 9:18 Civ. 1435, 2019 WL 1958017, at *4 (N.D.N.Y. May 1, 2019) (parole condition that restricted contact with fiancé upheld where no showing that condition was not narrowly tailored to his offense)).

"Restrictions upon the First Amendment rights of parolees are valid as long as 'the restrictions are reasonably and necessarily related to the advancement of some justifiable purpose of imprisonment.'" Bostic v. Jackson, 04 Civ. 676, 2008 WL 1882696, at * 2 (N.D.N.Y Apr. 24, 2008) (quoting Birzon v. King, 469 F.2d 1241, 1243 (2d Cir.1972) and citing Farrell v. Burke, 449 F.3d 470, 497 (2d Cir. 2006)). Moreover, courts have repeatedly examined whether conditions

restricting familial or marital associations violate substantive due process and often found that they do not in. See, e.g. Gray-Davis v. Rigby, 5:14 Civ. 1490, 2016 WL 1298131, at * 7 (N.D.N.Y. March 31, 2016) (finding no constitutional violation where parole condition precluded contact with spouse), appeal dismissed, (2nd Circ. 16-1411) (Jun 13, 2016); Matter of George v. N.Y.S. Dep't of Corr. and Cmty. Supervision, 107 A.D.3d 1370 (3d Dep't 2013) (same); Bohem, 79 A.D.3d at 1446-48 (same); Williams v. N.Y.S. Div. Parole, 71 A.D.3d 524 (1st Dep't 2010) (upholding contact bar with spouse based on domestic violence complaint that was withdrawn and did not result in parole violation); People v. Howland, 145 A.D.2d 866, 867-68 5 (3d Dep't 1988) (upholding probation condition that prevented plaintiff from associating with her husband, a parolee, who was also the father of her children); see also Robertson v. Allen, 15-CV-11, 2016 U.S. Dist. LEXIS 5080, *23-24 (N.D.N.Y. Jan. 15, 2016) (overcoming parental right in remaining with children).

### c.  The Conditions at Issue are Rational

As detailed in the Shaw Declaration and acknowledged in the Complaint (see *supra* at pp. 2-4), Mr. Marquez has had many problems obeying the conditions of his post-release supervision beyond his relationship with Ms. Wallace. While Plaintiffs' Memorandum of Law cites several decisions in support of their request that could be applicable under different factual circumstances, none involve a case where (1) two sex offenders on parole supervision who were found guilty of sexually assaulting particularly vulnerable victims chose to get married after specifically being advised to not have contact with each other and (2) one of the parolees (Mr. Marquez) repeatedly violated parole, including engaging in violent conduct (assault, resisting arrest) and illegal drug use, while also failing to complete required post-release programming. See *supra* at pp. 2-4. Unfortunately, Mr. Marquez has performed poorly while on parole, and there is a legitimate

14

concern that until he improves his performance, aside from public safety issues, that he may negatively impact Ms. Wallace, who has generally performed well on parole, outside of her relationship with Mr. Marquez. <u>See</u> Shaw Decl. ¶ 17.

While it is unfortunate that, until Mr. Marquez improves to the point that DOCCS feels that the conditions in question may be further revised, Ms. Wallace may feel deprived of his companionship, this Court should not reward Mr. Marquez's poor behavior by overruling rational parole conditions. As previously noted, DOCCS will allow Plaintiffs to communicate by telephone at this time and, if Mr. Marquez's performance improves (and Ms. Wallace's does not worsen), there is no reason to believe that the restrictions in place cannot be further revisited. Moreover, Mr. Marquez's period of post-release supervision is scheduled to end in October 2022, at which time he would no longer be subject to the conditions in question. If the conditions on Ms. Wallace remain at that time (and she may request that they be revisited as well before then), she can request that DOCCS vacate or modify them if she has continued to perform well. At no time has DOCCS ever stated that the conditions are permanent and can never be revised if the circumstances warrant.

### iii.   <u>GPS Monitoring</u>

.   While Plaintiffs have submitted a proposed order that includes an injunction against Plaintiffs being subject to GPS monitoring (ECF No. 73), Plaintiffs' Memorandum of Law (ECF No. 70) makes no mention that this relief is being sought or the legal basis for it. Moreover, while the Complaint contains background allegations regarding GPS monitoring, it delineates no causes of action regarding this issue, thus Plaintiffs have no likelihood of success on their underlying claim as they have none. Moreover, the Complaint acknowledges (at ¶¶ 121-126) that the GPS monitoring began more than two years ago. Plaintiffs only sought the instant relief last month, creating an inference that the request sought is not urgent and that any alleged harm is not

irreparable. Accordingly, this relief should be denied.

Regardless, Plaintiffs' conduct, in particular Mr. Marquez's, justifies GPS monitoring. See generally Shaw Decl.; see also U.S. v. Lambus, 897 F.3d 368, 408 (2d Cir. 2018) (finding GPS monitoring rational). In any event, even a search with no suspicion will be upheld if conducted under a regulatory scheme that is structured to provide intense supervision and that establishes unambiguous awareness of and consent to suspicionless searches.  See U.S. v. Green, 12-CR-83S, 2016 U.S. Dist. LEXIS 87388, *26 (W.D.N.Y. July 6, 2016) (conditions of parole allowed search). Here, Plaintiffs each agreed to GPS monitoring. See Tse Decl., Ex. G (ECF No. 23-11 (6 of 8) (GPS monitoring (Marquez); and Ex. H (ECF No. 23-12 (8 of 9) (GPS monitoring (Wallace)).

## CONCLUSION

As Plaintiffs cannot meet the stringent requirements for the extraordinary remedy of a preliminary injunction, Defendants respectfully requests that the Court deny Plaintiffs' Motion for a Preliminary Injunction.

Dated: New York, New York
       May 15, 2020

                                        Respectfully submitted,

                                        LETITIA JAMES
                                        Attorney General of the
                                        State of New York
                                        Attorney for Defendants

                                        By:_____ /s/Jeb Harben
                                        JEB HARBEN
                                        Assistant Attorney General
                                        28 Liberty Street, 18th Floor
                                        New York, New York 10005
                                        (212) 416-6185