UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
MARITZA MARQUEZ and YANCY MARQUEZ, :
: **ORDER ON MOTION TO**
Plaintiffs, : **DISMISS AND MOTION FOR**
-against- : **PRELIMINARINY INJUNCTION**
:
ANTHONY J. ANNUCCI, Acting Commissioner : 20 Civ. 1974 (AKH)
of the New York State Department of Corrections :
and Community Supervision, in his official :
capacity only; WILLIAM HOGAN, Regional :
Director of New York State Department of :
Corrections and Community Supervision; JOSEPH :
LIMA, Area Supervisor for the New York State :
Division of Parole; Bureau Chief LEWIS :
SQUILLACIOTI; Senior Parole Officer M. :
MEDINA; Parole Officer ROSA NUNEZ; Senior :
Parole Officer R. HAMILTON; Senior Parole :
Officer KEVIN UZZELL; Senior Parole Officer :
NEELEY; Bureau Chief MARK PARKER; Parole :
Officer ALEXANDRA MANDERSON; Parole :
Officer BRIAN FULLER; Parole Officer :
MERCEDES; Parole Officer JOHN DOE; Parole :
Officer RODRIGUEZ; Parole Officer McEWEN; :
Parole Officer LOFTON; Senior Parole Officer :
HAMILTON; Parole Officer LINDSY OSOUNA; :
Senior Parole Officer J. KENNEDY; and, Parole :
Officer A. CONYERS, :
:
Defendants. :
-------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

Plaintiffs are sex offenders who, having served their respective terms of

confinement, remain subject to state post-release supervision with the usual conditions that they

not associate with convicted criminals and special conditions specifically prohibiting them from

associating with each other. In violation of the conditions, they met, fell in love, married, were

punished for violating the conditions of their post-release supervision, and continue to remain

subject to conditions prohibiting them from seeing each other. By this "1983" action, they seek to free themselves of the conditions that prevent them from living together as husband and wife and establishing their married household. Applied to each other, they argue, the continuing enforcement of the conditions violates the Due Process Clause of the Fourteenth Amendment. They sue the several correction and parole officials responsible for enforcing the conditions, and seek a preliminary injunction against such enforcement.

Plaintiffs move for a preliminary injunction, and Defendants move to dismiss the complaint. I heard oral argument of both motions on June 25, 2020. By this order, I dismiss several Defendants, and grant Plaintiffs' motion for preliminary injunction as to the remaining Defendants.

## BACKGROUND

Plaintiffs Maritza Marquez, née Wallace ("Maritza"), and Yancy Marquez ("Yancy") each served five-year terms of imprisonment for committing serious sex offenses, Maritza, for abusing an elderly woman in her charge by pressing her vagina on the woman's mouth and kissing her face and body, and Yancy, by engaging in sexual conduct with an eight-year old male cousin. Compl. ¶¶ 38-40. Both had pleaded guilty, and both remain subject to post-release supervision, a 20-year term for Maritza and a 10-year term for Yancy. *Id.* The General Conditions of their post-release supervisions each contained a General Rule 7, authorized by 9 N.Y.C.R.R. § 8003.2(g), providing:

> I will not be in the company of or fraternize with any person I know to have a criminal record or whom I know to have been adjudicated a Youthful Offender except for accidental encounters in public places, work, school, or in any other instance with the permission of my Parole Officer.

Decl. of Tomoeh Murakami Tse in Support of Plaintiffs' Action, Ex. D1, ECF No. 23-4, at 5; Ex. G, ECF No. 23-9, at 1.

In 2015, after their releases from prison, Plaintiffs met at The Fortune Society, where they were receiving job training and other therapeutic support, fell in love, and asked their respective parole officers to allow them to pursue their relationship. Compl. ¶¶ 65-67. Maritza's parole officers, Defendant Alexandra Manderson and her supervisor, Defendant Kevin Uzzell, were willing, but Yancy's parole officer, Defendant Rosa Nunez, was not, and issued a special condition prohibiting Yancy to have contact with Maritza.[1]  Compl. ¶¶ 69-71. Defendants Uzzell and Manderson, Maritza's officers, deferring to Defendant Nunez, Yancy's officer, then issued a similar special condition applicable to Maritza.[2]  Compl. ¶ 72.

Plaintiffs nevertheless married on September 6, 2015, and told their parole officers soon after. Compl. ¶¶ 76-77. Both were arrested and found guilty of violating the conditions imposed on them. Compl. ¶¶ 79-86. Yancy was sentenced to 12 months custody; Maritza did not have to serve time. Compl. ¶¶ 85-86. The conditions prohibiting Yancy and Maritza from seeing each other remained in place. Compl. ¶¶ 86, 98-99. Maritza was not allowed to visit Yancy during his confinement, by order of her parole officer, Defendant Brian Fuller. Fuller permitted her to write and to advance commissary funds, but not to visit. Compl. ¶¶ 89-90. Following Yancy's discharge from prison, in August 2017, his supervision was transferred from Manhattan to the Bronx, and his new parole officer did not include the special condition forbidding him to see Maritza. Compl. ¶¶ 101-02. Maritza's successor parole officer, Aiesha Quick, also allowed the two to visit each other. Compl. ¶ 107. But the togetherness did not last. A new parole officer, Defendant Lofton, was appointed to supervise Yancy, and Lofton made clear that General Rule 7 prohibited contacts between Yancy and Maritza. Compl. ¶¶ 109-

---

[1] Under New York regulations, a parole officer, member of the Board of Parole, or authorized representative of the Board of Parole may impose special conditions prior or subsequent to a parolee's release. 9 N.Y.C.R.R. §§ 8003.2(l), 8003.3. The special condition imposed on Mr. Marquez states, in relevant part, "I will not have any contact or associate with Maritza Wallace . . . . Failure to abide by the above conditions may result in violation of my parole." Decl. of Tomoeh Murakami Tse in Support of Plaintiffs' Action, Ex. C, ECF No. 23-3, at 6.
[2] The condition states, "I will have no contact of any sort with Yancy Marquez. This includes telephone, text, and third party." Decl. of Tomoeh Murakami Tse in Support of Plaintiffs' Action, Ex. D1, ECF No. 23-4, at 15.

12.³ Nevertheless, on New Year's Day 2018, the two were together. Compl. ¶ 121. In response, Lofton ordered a GPS monitor to be placed on Yancy, and Quick, acting on instructions from her supervisors, told Maritza that she had to stay away from Yancy. Compl. ¶¶ 121, 123-24. A GPS monitor was placed also on Maritza. Compl. ¶¶ 125-26. As Danielle May, assistant counsel for DOCCS, told Plaintiffs' lawyer, Plaintiffs could not see each other because they were "high level offenders" who committed "the same offense in terms of category of offense," and "just like you wouldn't have two robbers living together, you wouldn't have two sex offenders living together." Compl. ¶ 122.

In all other respects, Maritza was a model parolee who abided by the rules, refrained from committing new crimes, completed treatment programs, and found employment opportunities. Compl. ¶¶ 59-64, 130-35. Yancy, however, struggled with addiction and entered drug treatment in 2015 and 2018 after testing positive for illicit substances. Compl. ¶ 55 & n.8. In 2018, he was charged with a parole violation for punching a co-resident at a homeless shelter. Compl. ¶¶ 137-39; Decl. of Leleith Shaw, Ex. C, ECF No. 84-2, at 41. (The parties dispute the merits.) In 2019, he was arrested for jumping a turnstile, resulting in a plea of guilty to theft of services and a violation of post-release supervision. Compl. ¶¶ 149-50.

Post-release supervision is scheduled to end for Yancy in 2022, and for Maritza, in 2034.

Plaintiffs support their motion by the report of an expert, Dr. Jeffrey Singer, on the basis of his psychological evaluation and risk assessment of Plaintiffs. Dr. Singer concluded that "if [Plaintiffs] are allowed to be together, they will support each other in their daily lives, thereby mitigating and decreasing the risk of sexual re-offense, and of criminal re-offense in general," and "the current ban on their relationship has only the potential to harm their individual

---

³ The complaint does not allege Defendant Lofton's full name. The same is true of certain other Defendants mentioned in this decision.

rehabilitative processes." *See* Decl. of Tomoeh Murakami Tse in Support of Plaintiffs' Action, Ex. I, ECF No. 23-13, at 3. He recommends that they have "unfettered access to each other." *Id.*

Plaintiffs allege that their parole conditions violate both substantive and procedural due process: substantive, for infringing on their fundamental right to intimate association, and procedural, for imposing the parole conditions without adequate written notice, factual basis, or explanation. Compl. ¶¶ 163-177. Plaintiffs seek a declaration that the challenged conditions are unconstitutional, an injunction barring enforcement of the challenged conditions, monetary damages, attorneys' fees, and costs.

The filing of the complaint brought some relief: DOCCS agreed to allow Plaintiffs to communicate by phone and represented (at oral argument) that it plans to remove GPS monitoring.

## DISCUSSION

### I. Defendants' Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a 12(b)(6) motion, the Court must "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Met. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

#### A. Statute of Limitations and Personal Involvement

The statute of limitations for Section 1983 claims arising in New York is three years. *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994). The present action was filed on March 5, 2020. Thus, claims accruing before March 5, 2017 should be time barred. Seemingly

recognizing this, Plaintiffs frame their claims as arising from violations of Plaintiffs' rights after March 2017, after Yancy was released from prison for violating post-release supervision by marrying Maritza. *See* Compl. ¶¶ 166, 173.

Some of Plaintiffs' claims, however, allege wrongs before March 2017. These must be dismissed. The continuing violation doctrine does not save them. *See Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) ("To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy . . . and some non-time-barred acts taken in the furtherance of that policy.'" (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999))). The continuing violation doctrine does not save claims against a particular defendant where all of that defendant's alleged acts occurred outside the statute of limitations. *See Marshall v. Annucci*, No. 16-cv-8622 (NSR), 2018 WL 1449522, at *5 (S.D.N.Y. Mar. 22, 2018) (plaintiff "must *allege* that a particular defendant committed at least one wrongful act within the statutory period to state a claim against that defendant" (emphasis in original)).

Defendants argue also that the claims against several Defendants must be dismissed for failure to allege their personal involvements in the alleged constitutional violations during the relevant time period. "[I]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). "A defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983." *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003) (per curiam)). Claims against these individuals also must be dismissed.

Thus, the claims against Defendants Rosa Nunez, Kevin Uzzell, Alexandra Manderson, and Brian Fuller are dismissed because all of their alleged supervision ended before

March 2017. Compl. ¶¶ 19, 29, 32-33. The claims against M. Medina and R. Hamilton are dismissed because their role after March 2017 was supervisory and not direct. Compl. ¶¶ 20, 109. The claims against Defendant McEwen are dismissed because Plaintiffs fail to allege that she had a role in enforcing an unconstitutional condition. To the contrary, McEwen allowed Plaintiffs to see each other. Compl. ¶ 102.

Plaintiffs seek to re-plead against Defendant Medina. They argue that documents produced by Defendants in opposition to Plaintiffs' motion include Medina's notes showing that, as a supervisor, Medina was personally involved in prohibiting Yancy from seeing Maritza, and in placing GPS on Yancy. Since Medina's involvement occurred after March 2017, Plaintiffs have leave to file an amended complaint against him. All other Defendants named above are dismissed with prejudice.

### B. Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "If the right at issue was not clearly established by then existing precedent, then qualified immunity shields the defendant. Even if the right at issue was clearly established in certain respects, however, an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Vega v. Semple*, No. 18-3176-pr, 2020 WL 3494317, at *8-10 (2d Cir. June 29, 2020) (assessing whether reasonable officers would have been on notice that alleged conduct violated Constitution as of the date of the challenged conduct).

7

Defendants argue that they are entitled to qualified immunity because they did not violate any clearly established constitutional right. They note that Plaintiffs' situation is highly unusual and has not arisen in prior case law, and that General Rule 7 has been in place as a general condition of post-release supervision for years. Thus, they say, a reasonable officer would not view the challenged conditions as unlawful.

Defendants' motion to dismiss on this ground is denied. The rights to marry and maintain familial relationships through intimate association are well established. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2604 (2015); *Patel v. Searles*, 305 F.3d 130, 135-36 (2d Cir. 2002). It also is well established that the Government cannot impose conditions of release that arbitrarily restrict fundamental rights. *United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005). According to the complaint, Defendants imposed a complete ban on an intimate association within a marriage without first considering less restrictive alternatives. While Plaintiffs' specific situation has not arisen in case law, courts have held in the context of a ban on contact between a parent and child that failure to consider less restrictive alternatives to a blanket ban defeats a claim of qualified immunity. *Doe v. Cappiello*, 758 F. App'x 181, 184-85 (2d Cir. 2019); *Doe v. Lima*, 270 F. Supp. 3d 684, 711-12 (S.D.N.Y. 2017). As discussed below, *see infra* Part II.B, Defendants' actions are analogous to those cases.

Furthermore, "[g]iven the factual nature of [the] qualified immunity inquiry, . . . it is rarely appropriate to recognize the defense on a motion to dismiss." *Meserole St. Recycling, Inc. v. City of New York*, No. 06 Civ. 1773 (GEL), 2007 WL 186791, at *8 (S.D.N.Y. Jan. 23, 2007). Where a defendant attempts to assert qualified immunity at the 12(b)(6) stage, "[n]ot only must the facts supporting the defense appear on the face of the complaint," but also "the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d

Cir.1992)). Based on the facts alleged in the complaint and drawing all inferences in Plaintiffs' favor, at the time the challenged conditions were imposed and enforced, Defendants knowingly impeded a fundamental right without offering any justification or providing notice or a procedure for challenging the conditions. This is sufficient at the pleading stage to defeat Defendants' argument of qualified immunity.

Defendants also argue that the Eleventh Amendment bars recover of monetary damages against them in their official capacities. However, Plaintiffs sue Defendants in both their official and individual capacities. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (state official does not have Eleventh Amendment immunity as to claim brought against him in his individual capacity). Plaintiffs' claims for monetary damages are dismissed to the extent they are asserted against Defendants in their official capacities but remain to the extent they are asserted against Defendants in their individual capacities.

### C. Constitutional Violation

Defendants seek dismissal of the case on the basis that the challenged conditions are constitutional. For the reasons discussed below, *see infra* Part II.B, Plaintiffs sufficiently allege that Defendants' actions are unconstitutional. Indeed, Plaintiffs are likely to succeed on the merits of their claims.

## II. Plaintiffs' Motion for a Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that [the relief] is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The requested injunction is a prohibitory rather than mandatory injunction. *See Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (holding injunction is prohibitory when it enjoins government enforcement of a regulation). Thus, Plaintiffs are not subject to the heightened evidentiary standard

associated with a mandatory injunction. *See Tom Doherty Assocs., Inc. v. Saban Entm't*, 60 F.3d 27, 34 (2d Cir. 1995) ("[A] mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985))). Here, all factors weigh in Plaintiffs' favor.

### A. Irreparable Harm

"To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent," and "[t]he injury must be one requiring a remedy of more than mere money damages." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) (internal quotation marks omitted).

I find that Plaintiffs will suffer irreparable harm absent a preliminary injunction. "When a plaintiff alleges a deprivation of a constitutional right, the Court presumes the existence of irreparable harm." *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 276 (S.D.N.Y. 2019). Thus, Plaintiffs' allegation of a constitutional violation is on its own sufficient to find irreparable harm. *See Conn. Dep't of Envtl. Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004) ("Because violations of constitutional rights are presumed irreparable, 'the very nature of [plaintiff's] allegations' satisfies the requirement that it show irreparable injury." (internal citations omitted) (quoting *Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996))). Furthermore, their continued separation is depriving them of each other's support, a tool that could help them reintegrate into society.

Plaintiffs' delay in seeking relief does give the Court pause. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action."). The special conditions prohibiting Plaintiffs' contact were imposed in

August 2015, about four and a half years before this suit was filed in March 2020. Though enforcement of the conditions has been inconsistent, authorities began applying the conditions with renewed force in January 2018, when they installed GPS monitoring equipment on both Plaintiffs. Thus, the delay in seeking injunctive relief has been significant. Nonetheless, in balancing the presumed irreparable harm stemming from an alleged constitutional violation on one hand and a delay in seeking injunctive relief on the other hand, the alleged constitutional deprivation is the more compelling consideration. *See Hardy v. Fischer*, 701 F. Supp. 2d 614, 619 (S.D.N.Y. 2010) (holding in case challenging constitutionality of post-release supervision that "the Court does not find that any delay in filing this lawsuit justifies the denial of interim relief from an ongoing alleged constitutional violation"); *Yafai v. Cuccinelli*, No. 20 Civ. 2932 (AT), 2020 WL 2836975, at *4 (S.D.N.Y. June 1, 2020) ("[W]here, as here, an alleged wrongful governmental act has resulted in an ongoing deprivation of constitutional rights, delay in seeking relief does not defeat the presumption of irreparable harm—at least when the delay is not so severe as to implicate the equitable doctrine of laches."). *But see Wallikas v. Harder*, 78 F. Supp. 2d 36, 42-43 (N.D.N.Y. 1999) (finding plaintiff's ten-month delay in bringing preliminary injunction motion based on alleged constitutional violations weighed against finding of irreparable harm).

### B. Likelihood of Success on the Merits

"[F]reedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Bd. of Ed. v. LaFleur*, 414 U.S. 632, 639-40 (1974); *see also Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002) (holding relationships between spouses "receive the greatest degree of [constitutional] protection because they are among the most intimate of relationships"). In several cases involving conditions that prevent releasees from seeing their children, courts have held that conditions of post-release supervision that implicate the fundamental liberty interest in familial

11

relationships are subject to strict scrutiny. *See United States v. Myers*, 426 F.3d 117, 126 (2d Cir. 2005); *Doe v. Cappiello*, 758 F. App'x 181, 184 (2d Cir. 2019); *Doe v. Lima*, 270 F. Supp. 3d 684, 703 (S.D.N.Y. 2017) ("[P]arole conditions that bar a parent from all contact with a child or condition such contact on a parole officer's approval implicate a fundamental liberty interest in a familial relationship, are subject to strict scrutiny, [and] require individualized justification based on the threat posed by the defendant to the child . . . ."). Though none of these cases involve contact with a spouse, I hold that the same principle applies, and strict scrutiny is appropriate. *Cf. Smith v. Org. of Foster Families for Equality & Reform*, 431 U.S. 816, 843 (1977) ("[B]iological relationships are not exclusive determination of the existence of a family. The basic foundation of the family in our society, the marriage relationship, is of course not a matter of blood relation. Yet its importance has been strongly emphasized in our cases."). Thus, the Court must ask "if the deprivation is narrowly tailored to serve a compelling government interest." *Myers*, 426 F.3d at 126.

Plaintiffs are likely to succeed on the merits of their due process challenge because the challenged conditions are not narrowly tailored to serve a compelling government interest. Defendants told Plaintiffs' counsel the challenged conditions were necessary because Plaintiffs both committed high-level sex offenses. In their briefing and at oral argument, Defendants also argued that because Yancy has performed poorly while on parole and Maritza has performed well, lifting the challenged conditions may hinder Maritza's rehabilitation and remove Yancy's incentive to improve. These purported justifications are speculative. While the goal of reducing the risk of recidivism is a compelling government interest, the interference with, and prevention of, a marriage relationship does not serve that goal. I find, as Dr. Singer opines, that Plaintiffs' relationship in marriage is more likely to be consistent with a law-abiding life.

The cases cited by Defendants are inapposite. Some reinforce that the Government generally has the power to impose parole conditions, including parole conditions

12

that restrict freedom of association. *See, e.g.*, *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972). That general proposition is not in dispute; the issue is whether a particular restriction can be applied to the facts of this case. Other cases cited by Defendants uphold conditions prohibiting association with family members who were either co-conspirators or victims in the parolees' prior offenses. *See, e.g.*, *Williams v. N.Y. State Div. of Parole*, 71 A.D.3d 524, 525-26 (1st Dep't 2010) (upholding parole condition that prevented parolee from seeing his wife where parolee had extensive history of violence against women, had violated orders of protection with respect to current and former wives, and had been arrested twice for assaulting and harassing wife). That is not the case here. Neither Plaintiff has been accused of committing a crime with or against a domestic partner. Thus, Plaintiffs are likely to succeed on their substantive due process challenge.[4]

### C. Balance of Equities and Public Interest

The balance of the equities and the public interest, "[t]he final two factors[,] merge when an injunction is to be issued against the government." *Planned Parenthood of N.Y.C., Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018). The balance of the equities favors granting a preliminary injunction. First, "public interest is best served by ensuring the constitutional rights of persons within the United States are upheld." *Sajous v. Decker*, No. 18-CV-2447, 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018). Additionally, public interest favors ensuring that Plaintiffs lead law-abiding lives. Dr. Singer, the expert who evaluated Plaintiffs, concluded that allowing them to live their lives as a married couple would decrease the risk of recidivism, while keeping them apart would harm the

---

[4] Plaintiffs argue that they were denied procedural due process. They claim that there should have been a hearing before applying a condition that would interfere with, and prevent, a marriage. In light of my ruling that substantive due process was violated, I do not rule on this argument.

13

rehabilitative process. Thus, the evidence suggests that the public interest would be better served by allowing Plaintiffs to live their lives together as a married couple.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted to the extent that claims against Rosa Nunez, Kevin Uzzell, Alexandra Manderson, Brian Fuller, McEwen, and R. Hamilton are dismissed with prejudice; claims against Defendant M. Medina are dismissed without prejudice to repleading with sufficient allegations of personal involvement during the limitations period; and claims for damages are dismissed to the extent they are asserted against state officials in their official capacities. The motion to dismiss is denied in all other respects. Plaintiffs' motion for a preliminary injunction is granted. All Defendants who remain in the case are preliminary enjoined from creating or enforcing any conditions of supervision that prevent, or interfere with, Plaintiffs' lawful relationship as a married couple. They are further enjoined from forcing Plaintiffs to wear GPS monitoring equipment.

The parties shall settle the terms of a preliminary injunction. Plaintiffs shall submit a draft to Defendants for their consent by July 14, 2020; any differences will be filed with the court in a single document by July 17, 2020.

Plaintiffs shall file an amended complaint consistent with this decision, and may include non-time-barred allegations against M. Medina, by July 20, 2020. Defendants shall file their answer by July 30, 2020.

The parties shall appear telephonically for an initial pre-trial conference on August 14, 2020, at 10:00 a.m.

The clerk shall terminate the two motions, ECF Nos. 69, 85.

SO ORDERED.

Dated:    July 9, 2020                     /s/ Alvin K. Hellerstein
          New York, New York               ALVIN K. HELLERSTEIN
                                           United States District Judge